UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------x
HOPE JONES,

                Plaintiff,

     -against-

THE ASSOCIATION FOR REHABILITATIVE
CASE MANAGEMENT AND SUPPORTED
HOUSING PROGRAM, INC.,

               Defendant.

----------------------------------------------------------------x

_____ Civ. _____

**COMPLAINT AND**
**JURY DEMAND**

## PRELIMINARY STATEMENT

1.     Plaintiff, a mentally disabled resident of a facility run by the Association for Rehabilitative Case Management and Supported Housing Program, Inc. (hereinafter "Defendant" or "ACMH"), is currently facing eviction and homelessness due to Defendant's refusal to accommodate her disabilities. ACMH is obligated under its contracts and the rules promulgated by the New York State Office of Mental Health ("OMH") to follow certain procedures prior to discharging residents and to provide ongoing case management services to Plaintiff, which include financial management services such as accessing and maintaining government benefits and budgeting. Rather than provide support to Plaintiff, Defendant instead sued Plaintiff in housing court to collect rent under threat of eviction without assisting her with financial management services or program compliance.

2.     By discriminating in this way against Plaintiff on the basis of her disability, ACMH is placing at risk of homelessness a disabled person who is a member of the population

1

ACMH purports to protect. Defendant's conduct violates the Fair Housing Act, the Americans with Disabilities Act, the New York State Human Rights Law and the New York City Human Rights Law, the Regulations of the New York State Office of Mental Health (OMH), and contracts between ACMH and various city agencies. Plaintiff seeks a declaration that by failing to reasonably accommodate her disability, ACMH is unlawfully discriminating against her on the basis of disability and depriving her of an equal opportunity to use and enjoy her housing accommodations, an injunction directing ACMH to accommodate her now and in the future, and damages for the injuries and expenses incurred as a result of Defendant's violations of law.

## JURISDICTION AND VENUE

3.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States; 28 U.S.C. § 1343 for actions arising under laws providing for the protection of civil rights; and 42 U.S.C. § 12133 as an action pursuant to the Americans with Disabilities Act of 1990. Plaintiff's state law claims are pled pursuant to 28 U.S.C. § 1367 because Plaintiff's federal and state law claims are related and arise out of a common nucleus of related facts.

4.      Plaintiff seeks declaratory relief pursuant to 28 U.S.C. §§ 2201 and 2202 (Declaratory Judgment Act) and Rule 57 of the Federal Rules of Civil Procedure, and injunctive relief pursuant to 42 U.S.C. § 3613(c) (Fair Housing Act) and Rule 65 of the Federal Rules of Civil Procedure.

5.      Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b) because that is the district in which the acts and omissions giving rise to Plaintiff's claims occurred.

## PARTIES

6.      Plaintiff Hope Jones is a mentally and physically disabled woman who resides at 788 East 182nd Street, Apartment 2D, Bronx, NY 10460. Ms. Jones has been and continues to be adversely affected by the acts, policies and practices of Defendant and/or its agents.

7.      Defendant Association for Rehabilitative Case Management and Supported Housing Program, Inc. (ACMH) is a not-for-profit corporation duly formed under the laws of the State of New York. ACMH operates housing and provides supportive social services for persons with disabilities and thus its facilities qualify as a covered dwelling under 42 U.S.C. §3604(f)(7)(A) of the Fair Housing Act, and a social service center establishment under 42 U.S.C. § 12181(7)(k) of the Americans with Disabilities Act.


## JURY DEMAND

8.      Plaintiff hereby demands a trial by jury.

## STATUTORY AND REGULATORY SCHEME

### The Fair Housing Act

9.      The Fair Housing Act (hereinafter "FHA") prohibits discrimination in the rental of housing in covered multi-family dwellings. 42 U.S.C. §3604 *et seq*.

10.      The FHA makes it unlawful to discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of that person.    42. U.S.C. §3604(f)(2)(A).

11.      A handicap under the 42 U.S.C. §3602(h) means:

(1) a physical or mental impairment which substantially limits one or more of such person's major life activities,

(2) a record of having such an impairment, or

(3) being regarded as having such an impairment, but such term does not include current, illegal use of or addiction to a controlled substance (as defined in section 102 of the Controlled Substances Act (21 U.S.C. 802)).

12.     For purposes of the FHA, discrimination includes a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling.  42 U.S.C. §3604(f)(3)(b).

13.     Under the FHA, "if the court finds that a discriminatory housing practice has occurred or is about to occur, the court may award to Plaintiff actual and punitive damages, and … may grant as relief, as the court deems appropriate, any permanent or temporary injunction, temporary restraining order, or other order (including an order enjoining the defendant from engaging in such practice or ordering such affirmative action as may be appropriate)." 42 U.S.C.A. §3613(c)(1). The court may also grant the prevailing party actual and punitive damages reasonable attorney's fees and costs. 42 U.S.C.A. §3613(c)(1) and (2).

## The Americans with Disabilities Act

14.     Title III of the Americans with Disabilities Act (the "ADA"), 42 U.S.C. § 12181, *et seq.*, states that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation."  42 U.S.C. § 12182(a).

4

15.     42 U.S.C. § 12181(7)(K) defines a "public accommodation" as "a day care center, senior citizen center, homeless shelter, food bank, adoption agency, or *other social service center establishment*…." (emphasis added)

16.     Under the ADA, an individual with a disability is a person who has a "physical or mental impairment that substantially limits one or more of the major life activities of such individual; a record of such an impairment; or [is] regarded as having such an impairment."  42 U.S.C. 12102; 28 C.F.R. § 36.104.

17.     28 C.F.R. § 36.104 defines a mental impairment as "[a]ny mental or psychological disorder such as mental retardation, organic brain syndrome, emotional or mental illness, and specific learning disabilities."

18.     Major life activities include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working. 42 U.S.C. § 12102(2)(A); 28 C.F.R. § 36.104(2).

19.     U.S. Department of Justice regulations provide that  "[a] public accommodation shall make reasonable modifications in policies, practices, or procedures, when the modifications are necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making the modifications would fundamentally alter the nature of the goods, services, facilities, privileges, advantages, or accommodations."  28 C.F.R. § 36.302 (a).

20.     Federal regulations further provide that:

No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any private entity who

owns, leases (or leases to), or operates a place of public accommodation. 28 C.F.R. § 36.201(a);

A public accommodation shall not subject an individual or class of individuals on the basis of a disability or disabilities of such individual or class, directly, or through contractual, licensing, or other arrangements, to a denial of the opportunity of the individual or class to participate in or benefit from the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation.  28 C.F.R. § 36.202(a);

A public accommodation shall afford goods, services, facilities, privileges, advantages, and accommodations to an individual with a disability in the most integrated setting appropriate to the needs of the individual.  28 C.F.R. § 36.203(a).

## New York State Human Rights Law

21.     The New York State Legislature enacted the Human Rights Law to "eliminate and prevent discrimination in…housing accommodations…."  N.Y. Executive Law § 290(3).

22.     It shall be an unlawful discriminatory practice for the owner, lessee, sub-lessee, assignee, or managing agent of, or other person having the right to sell, rent or lease a housing accommodation, or any agent or employee thereof to discriminate against any person because of . . . disability. . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services in connection therewith.  N.Y. Exec. Law § 296(5)(a)(2).

23.     The term "housing accommodation" includes any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings.

24.     The New York State Human Rights Law defines "disability" as "a physical, mental or medical impairment resulting from anatomical, physiological, genetic or neurological

conditions which prevents the exercise of a normal bodily function or is demonstrable by medically accepted clinical or laboratory diagnostic techniques…."  N.Y. Exec. Law § 292(21).

## New York City Human Rights Law

25.     The New York City Human Rights Law makes it "an unlawful discriminatory practice for any person, being the owner, lessee, proprietor, manager, superintendent, agent or employee of any place or provider of a public accommodation because of the actual or perceived . . . disability . . . directly or indirectly, to refuse, withhold from or deny to such person any of the accommodations, advantages, facilities or privileges thereof . . ." N.Y.C. Administrative Code § 8-107(4).

26.     The term "place or provider of public accommodation" shall include providers, whether licensed or unlicensed, of goods, services, facilities, accommodations, advantages or privileges of any kind, and places, whether licensed or unlicensed, where goods, services, facilities, accommodations, advantages or privileges of any kind are extended, offered, sold or otherwise made available.  N.Y.C. Administrative Code § 8-102(9).

27.     The City Human Rights Law also makes it an unlawful discriminatory practice "to discriminate against any person because of such person's actual or perceived . . . disability . . . in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith. N.Y.C. Administrative Code § 8-107(5).

28.     The term "housing accommodation" includes any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as

the home, residence or sleeping place of one or more human beings. N.Y.C. Administrative Code § 8-102(10).

29.     The New York City Human Rights Law defines "disability" as "any physical, medical, mental, or psychological impairment." N.Y.C. Administrative Code § 8-102(16).

## Contract

## 788 East 182nd Street

30.     Plaintiff Hope Jones resides at 788 East 182nd Street, Bronx, New York, 10460.

31.     788 East 182nd Street is governed by a contract with the New York State Office of Mental Health ("OMH").  The contract was entered into on July 1, 2019 and expires June 30, 2024.

32.     The contract states that the OMH contract funding amount for its current full contract term for services provided in its facilities totals $90,705,029.00.

33.     According to its contract, ACMH "must comply with all applicable provisions of the *Official Compilation of Codes*, *Rules, and Regulations of the State of New York*, including, but not limited to Title 14 (Mental Hygiene)." The contract states further that the ACMH Supported Apartment Programs, "provide rental assistance and community services in accordance with OMH Supportive Housing Guidelines."

34.     According to the contract, ACMH "Supported Housing will provide community services as follows: financial services and benefits (including accessing/maintaining entitlements and budgeting)."

35.     Plaintiff's Supported Apartment Program sub-lease agreement drafted by Defendant states that she lives in supported housing operated "pursuant to the guidelines promulgated by the NYS OMH."

36.     According to Defendant's website, funding for the Supported Apartment Program comes from New York State Office of Mental Health ("OMH") and the New York City Department of Health and Mental Hygiene ("NYC DOHMH").

**New York State Office of Mental Health Rules and Regulations for the Operation of Residential Programs for Adults**

37.     The Office of Mental Health ("OMH") rules and regulations provide numerous rights and protections for the residents living in ACMH facilities. The regulations set forth a multi-step process before a resident can be discharged from a facility for failure to comply with residency responsibilities. This process ensures that each resident is given every opportunity to retain their current housing. However, if their residency in the ACMH facility is no longer appropriate, the regulations ensure that they are referred to alternative residential and service options rather than immediately subjected to the risks of Housing Court and homelessness.

38.     Pursuant to Article 31 of the New York State Mental Hygiene Law, the Commissioner of the Office of Mental Health has the authority and responsibility to set standards for the quality and adequacy of facilities and programs that provide services for the treatment and recovery of persons who suffer from mental illness. N.Y. Mental Hyg. Law § 31.04.

39.     The standards governing the operation of facilities and programs are contained in various sections of Title 14 of the Codes, Rules, and Regulations of the State of New York (14 N.Y.C.R.R.).

40.    These OMH regulations apply "to any provider of services which operates or proposes to operate a residential program for persons with mental illness and is licensed pursuant to Article 31 of the Mental Hygiene Law." 14 N.Y.C.R.R § 595.3.

## **Residential Program Requirements**

41.    The OMH regulations require that every residential program provide a mutually agreed upon service plan for each resident and that the plan be reviewed and signed by a qualified mental health staff person. 14 N.Y.C.R.R.  § 595.11 (b).

42.    Residential programs must provide a vast array of on-site social services and assistance seeking services within the community. 14 N.Y.C.R.R.  § 595.12 (a). These services must comply with the individual resident's service plan and may include assistance in a number of areas including; assertiveness/self-advocacy, community integration, daily living skills, health services, medication management, parenting training, rehabilitation counseling, skill development services, socialization, substance abuse services, and symptom management. 14 N.Y.C.R.R.  § 595.12 (b)(1)-(11)

43.    Residential programs must provide each resident with a clearly written residency agreement, approved by the Office of Mental Health, which specifies, among other things: the services required to be provided by the program, the residence fees, the resident grievance procedure and the allowable reasons and process for termination of residency by the providers of service.  14 N.Y.C.R.R. § 595.10 (a)(2)

44.    The regulations describe the responsibilities of the residents, which include, among other responsibilities: to respect the quiet enjoyment of other residents in common and shared residential areas; to refrain from creating health or safety hazards for themselves,

residents, staff or other individuals; and to pay the residency fees in full and in a timely manner. 14 N.Y.C.R.R. § 595.10 (c).

## Discharge Procedure

45.     The OMH regulations provide for multiple procedural protections before a resident can be discharged from a program for any alleged nuisance behavior or for the nonpayment of residency fees. If a resident fails to meet one or more material responsibilities for residency as described in § 595.10(a)(2) and (c), as laid out above, the program must take a number of steps before discharging the resident from the program. 14 N.Y.C.R.R.  § 595.9. This step process ensures that the provider makes every effort to retain a resident's current housing if possible.  When retention of current housing in no longer appropriate, the regulations require that the provider attempt to discharge the resident to alternative programs or services, rather than to the street and the City's shelter system. This multi-step process requires the following before a resident can be discharged for alleged objectionable behavior or the nonpayment of rent:

  a.  Provider shall make every reasonable effort to assist the resident in meeting the responsibilities of residency;

  b.  Provider shall conduct a clinical assessment and make efforts to identify a mutually agreed upon discharge plan;

  c.  Provider shall obtain assistance in procuring appropriate residential and service alternatives, which shall include referral to a single point of access process;

  d.   If the above efforts are not successful in resolving the issues, the provider must give the resident a 30-day preliminary notice of the intent to terminate the residency which shall provide the reasons for termination, any potential process

11

for correcting the situation and *alternative residential and service options.* This 30-day preliminary notice should also include the residence grievance procedure, and advise the resident of the availability of the mental hygiene legal service.

e.  If the above efforts are not successful in resolving the issues, the provider shall give the resident a written final notice of the intent to terminate residency in 30 days, which shall set forth the reasons for termination, as well as *alternative residential and service options which shall include a referral process.* Such notice shall also advise the resident that he or she has the right to submit a written objection to the Office of Mental Health contact person identified in the residency agreement, within five days of the date of the written final notice of intent to terminate residency.

f.  If the resident objects to the termination, the resident may then send in a written objection to the Office of Mental Health contact person and then the Office of Mental Health may hold a meeting with all parties and issue a decision.

g.  Finally, if any party is not satisfied with this written decision, the party may request an administrative review by the commissioner of OMH.

14 N.Y.C.R.R. § 595.9 (f)(1)-(7).

## Financial Management Services

46.  The OMH regulations require residential programs to provide a vast array of on-site social services to residents including instruction in and assistance with daily living skills. 14 N.Y.C.R.R. § 595.12 (a).

47.     The regulations define daily living skills training as, "activities which focus on the acquisition of skills and capabilities to maintain primary activities of daily life. Services are provided by addressing areas of functioning in categories such as: ….*budgeting and money management*." 14 N.Y.C.R.R.  § 595.4(b)(3) emphasis added.

48.     Further, all of the procedural protections included in 14 N.Y.C.R.R. § 595.9 (f)(1)-(7) apply to a resident who fails to meet a material responsibility of their residency, including the timely payment of residency fees. Therefore, the provider must, "make every reasonable effort to assist the resident in meeting the responsibilities of residency…" when a resident falls behind in their rent payments.  14 N.Y.C.R.R. § 595.9 (f)(1).

49.     The regulations require that the provider must assist each resident with budgeting and money management and if a resident still falls behind on their rent, the regulations require that the provider make every reasonable effort to assist the resident. Therefore, as their case managers for a myriad of social services, it would be simple for the provider to assist the resident in an application for emergency rental assistance through the Department of Social Services. Or the provider could designate itself or another agency the representative payee of the resident's Social Security benefits or Supplemental Security Income, ensuring that the rent was paid directly to the provider from the resident's benefits each month.

50.     A resident's case manager could easily assist the resident with an emergency assistance application or financial management, rather than subjecting a mentally disabled resident to a potentially devastating eviction proceeding.

## STATEMENT OF FACTS

### Defendant ACMH

51.    Defendant Association for Rehabilitative Case Management and Supported Housing Program, Inc. (ACMH) is a not-for-profit corporation duly formed under the laws of the State of New York. ACMH operates a residential continuum of care comprised of Treatment Apartment Programs, Transitional Community Residences, Supported Apartment Programs, Permanent Affordable Apartment Buildings, ACMH Care Management Services, Short-term Crisis and Respite and Transitional Step-down Housing, and Home and Community Based Services. According to its website, ACMH is funded by OMH and the NYC Department of Health and Mental Hygiene (DOHMH), to offer permanent housing with supportive case management in leased apartments throughout Manhattan, Queens and the Bronx.

52.    ACMH's mission statement extols its values, which it says include empowerment and kindness. https://www.acmhnyc.org/about-us/, (last visited September 11, 2019).

53.    However, ACMH violated Federal and State law and discriminated against Plaintiff, a disabled resident, by failing to provide reasonable accommodations to enable her to have an equal opportunity to use and enjoy her housing accommodation.

54.    ACMH was on notice of Plaintiff's mental health disability upon her admittance into ACMH's facilities. Yet, ACMH failed to provide Plaintiff with a reasonable accommodation before subjecting her to the uncertainties and stress of Housing Court and an imminent risk of homelessness. ACMH made no effort to comply with the requirements for discharge as set forth in the OMH rules and regulations and various agency contracts, which would accommodate for Plaintiff's disabilities. ACMH failed to provide Plaintiff with preliminary notices, a referral to

14

legal services, assistance locating alternative services or housing, or notice of any grievance procedure or review by OMH.

55.     ACMH failed to assist Plaintiff with simple case management advocacy to resolve her arrears and instead subjected her to imminent danger of homelessness by bringing an unnecessary nonpayment eviction proceeding against her.

56.     Further, after subjecting Plaintiff to Housing Court, it continued to discriminate against her, depriving her of an equal opportunity to protect her housing.

a.   ACMH failed to notify the Housing Court in its pleadings of the rules and regulations that bind ACMH buildings and would have served the purpose of alerting the court to Plaintiff's disabilities and the substantive procedural protections the rules and regulations would have provided to her.

b.   When Plaintiff failed to appear in Housing Court, ACMH counsel failed to inform the court of her disability. The case was apparently scheduled for an inquest and Plaintiff filed an Order to Show Cause seeking to restore the case to the Housing Court's calendar. Plaintiff's very disability contributed to her nonappearance in court.

57.     Further, ACMH appears to be engaged in a pattern and practice subjecting its residents to unnecessary Housing Court proceedings. The wide-ranging impact on ACMH residents whose evictions are sought in Housing Court is plain. As of the date of this complaint, in the Bronx alone, ACMH is currently litigating four nonpayment proceedings. Plaintiff's counsel was able to obtain and review these Housing Court files and, of the four, two of the residents failed to appear with the Housing Court issuing a default judgment against at least one of them. In each of them, however, ACMH failed to state that it is a not-for-profit that serves the mentally disabled; that the subject premises are part of a Supported Housing Program for the

15

housing and care of mentally disabled residents; or that ACMH is subject to a contract with OMH or other government agencies. In each proceeding the resident in the Housing Court proceeding was or is in imminent danger of eviction.

## Plaintiff Hope Jones

58.     Hope Jones resides at 788 E 182nd Street, Apartment 2D, Bronx, NY 10460. The building is a part of Defendant's Supported Apartments program serving adults who have been diagnosed with a serious mental illness. Defendant ACMH has a lease agreement with the private owner of the building for Plaintiff's unit, 2D. The last sublease agreement between ACMH and Ms. Jones was entered into on January 2, 2018 as part of their scattered-site housing program funded through a contract with the New York State Office of Mental Health (OMH).

59.     Hope Jones was placed in a different ACMH facility at 500 West 157th Street, New York, NY 10032 from the shelter system sometime in or around 2012. That facility provides a higher level of support than her current Supported Apartment facility. Ms. Jones was later moved to the subject premises in or around June 2014. Ms. Jones is mentally disabled and suffers from schizoaffective disorder. Her only income is Social Security Income.

60.     ACMH provided Ms. Jones with a Supported Apartment Housing Program sublease agreement prior to her moving into the apartment. Pursuant to the sublease agreement, Ms. Jones is responsible for paying 30% of her income, or $219.19, each month. Ms. Jones was assigned a case manager when she first arrived but has received little case management services from ACMH since moving into the residence.

61.     On or around April 5, 2018, Defendant allegedly demanded rent from Plaintiff seeking $4,167.03 going back to July 2015.

62.     The first time Ms. Jones became aware that arrears had accumulated was when she was approached by Defendant's attorney in Housing Court. ACMH did not provide financial management services to Ms. Jones or assist her with securing a rental assistance grant prior to commencing the case. Further, Ms. Jones was not provided with any reasonable accommodations based on her disability prior to commencing an eviction proceeding.

63.     Defendant alleges it served on Plaintiff a Notice of Petition and Petition dated June 22, 2018, commencing a summary eviction proceeding for nonpayment of rent in Bronx Housing Court. Ms. Jones never received a Rent Demand or Petition and went to Housing Court after receiving an index card from the court advising her to answer the Petition. Plaintiff filed an answer *pro se* on July 10, 2018. The matter was calendared for July 17, 2018.

64.     The Petition fails to state that ACMH is a not-for-profit that serves the mentally disabled; that the subject premises is part of a Scattered Site Supported Housing Program for the housing and care of mentally disabled residents; or that ACMH is subject to a contract with OMH.  Therefore, the Housing Court had no notice that Ms. Jones is mentally disabled or any notice of the substantive rules and regulations that the apartment may be subject to under the contract with OMH.

65.     On July 17, 2018, Ms. Jones appeared *pro se* and the matter was adjourned to August 20, 2018.

66.     The Housing Court case was subsequently adjourned to September 26, 2018 at which time Plaintiff failed to appear because she was confused about when her next court appearance was and the court apparently scheduled an inquest.

67.     Plaintiff then filed an Order to Show cause seeking to vacate the default judgment she believed was entered against her on September 26, 2018. A Housing Court judge signed the Order to Show cause and the case was calendared for October 10, 2018.

68.     On October 10, 2018 the parties appeared and the case was adjourned to November 11, 2018.

69.     On November 11, 2018, both parties appeared and the case was adjourned.

70.     Plaintiff retained Bronx Legal Services on or around November 15, 2018.

71.     Counsel met with Ms. Jones for the first time in its offices on November 15, 2019, and observed the emotional, physical, and mental stress caused by the Housing Court proceeding. Ms. Jones was not aware how the arrears had accumulated because she believed her mother, who had recently died, had been paying her rent before her death. She was extremely anxious and deeply concerned that she would be evicted despite not having knowledge that arrears were accruing for years. The uncertainty of her housing situation took a toll on her mental health and the symptoms of her mental illness worsened. Ms. Jones also experienced physical symptoms related to pre-existing medical conditions that were exacerbated by the stress of her Housing Court case. In fact, she was hospitalized at least twice during the pendency of the Housing Court proceeding because of her worsening medical condition. ACMH made no effort to provide her with support, treatment, or with transitioning to a new provider, leaving Ms. Jones's mental and physical health to deteriorate.

72.     On December 6, 2018, Plaintiff through her attorneys moved to dismiss the housing court proceeding for failure to plead the correct regulatory status of the subject premises and for failure to follow the OMH rules and regulations; in the alternative, the motion sought to amend Plaintiff's answer and for leave to conduct discovery. The motion was scheduled to be

18

heard on December 13, 2018, at which time the matter was adjourned to January 25, 2019, for ACMH's counsel to serve and file opposition to the motion and to make repairs in Plaintiff's apartment.

73.     On January 25, 2019, the attorneys for Defendant again requested to adjourn the proceeding to March 12, 2019 to serve and file opposition to Respondent's motion and again to repair conditions in Plaintiff's apartment because Defendant never attempted to make repairs after the prior adjournment. On January 25, 2019 there existed open housing maintenance code violations issued by the New York City Department of Housing and Preservation Development ("HPD") based on the conditions in Plaintiff's apartment.

74.     On March 12, 2019, the parties appeared and adjourned the case to April 11, 2019 for Defendant to make repairs in Plaintiff's apartment, but Defendant again failed to even attempt repairs.

75.     On April 11, 2019 the parties appeared in housing court and argued Plaintiff's motion seeking dismissal or in the alternative to amend Plaintiff's answer and for discovery.

76.     On May 16, 2019 the Housing Court issued an order denying Plaintiff's motion to dismiss the proceeding, denying discovery, and granting Plaintiff's motion to amend her answer but striking several of her defenses, including her defense based on her request for a reasonable accommodation for her disability based on the Housing Court's determination that it did not have jurisdiction to consider such a defense.

77.     On June 21, 2019, Plaintiff moved to reargue the portion of her motion seeking to amend her answer and asking the court to reconsider its prior order striking her reasonable accommodation defense based on its misapprehension of the law. The attorneys for Defendant again served and filed opposition to Plaintiff's motion to reargue.

78.     On July 17, 2019, Plaintiff's counsel sent a letter to Defendant formally requesting a reasonable accommodation for Plaintiff's disability and requesting that Defendant discontinue its Housing Court case against Plaintiff and provide financial management assistance to Ms. Jones, including assisting her with a rental assistance grant application to address any arrears allegedly owed.

79.     On August 14, 2019, the court denied Plaintiff's motion to reargue, holding that it had properly decided the prior motion and appointed a Guardian Ad Litem ("GAL").

80.     On September 9, 2019, Plaintiff through her counsel filed a Housing Court HP case seeking repairs in her apartment. That case was calendared for October 4, 2019.

81.     As of the date of this complaint, Defendant has still not made any repairs in Plaintiff's apartment.

82.     The pending Housing Court proceeding continues to emotionally and mentally burden Ms. Jones. Ms. Jones has no other service provider.

83.     Further, even if the Housing Court proceeding is resolved with Ms. Jones remaining in her apartment, this is not a safeguard against future harm. It is the pattern and practice of ACMH to sue its residents in Housing Court without accommodating their disabilities prior to commencing the eviction proceeding. The Housing Court does not have the jurisdiction to enjoin ACMH to accommodate its resident's disabilities prior to bringing them to court. In addition, if ACMH commences another Housing Court proceeding against Ms. Jones, there is no guarantee that ACMH will plead the contracts and regulations by which it is bound, or otherwise inform the court of Ms. Jones's mental disability. Moreover, there is no guarantee that Ms. Jones would find her way to legal services again, or be provided with a lawyer.

## CLAIMS FOR RELIEF

### First Claim: Disability Discrimination Under the Fair Housing Act

84.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

85.     Defendant proceeded directly to eviction proceedings against Plaintiff in Housing Court without providing accommodations for her disability. Pre-eviction, ACMH failed to provide appropriate supportive services, adequate notices, an opportunity to correct and assistance with correcting the offending behavior, alternative residential and service options, and a fair hearing process with the opportunity to appeal. At the eviction stage, ACMH failed to alert the Housing Court of its status as a non-for-profit funded to serve the mentally disabled, and failed to notify the Housing Court of the rules and regulations ACMH is subject to under OMH regulations and contracts which provide Plaintiff with substantive defenses. Upon information and belief, ACMH failed to inform the Housing Court about Plaintiff's disability when she failed to appear at a Housing Court date with full knowledge that she suffers from a mental disability.

86.     Defendant's failure to provide a reasonable modification of its practices and procedures to afford Plaintiff an equal opportunity to use and enjoy her dwelling constitutes discrimination against Plaintiff in the terms, conditions or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection therewith because of a handicap of that person. 42 U.S.C. §§ 3604(f)(2)(A); §3604(f)(3)(b).

87.     Plaintiff is an aggrieved person as defined in 42 U.S.C. § 3602(i), has been injured by defendant's unlawful, intentional, and willful discriminatory conduct, and has suffered damages as a result.

21

88.     Defendant's conduct was unlawful, intentional, willful, and undertaken in disregard for the rights of others.

Accordingly, pursuant to 42 U.S.C. §§ 3613 (a) and (c), Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and reasonable attorneys ' fees and costs.

## **Second Claim:** **Disability Discrimination Under the Americans With Disabilities Act**

89.     Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

90.     Defendant is a social services establishment in that it provides housing to persons with mental disabilities and is required to provide on-site supportive social services and counseling to Plaintiff with the goal of assisting her transition from long-term or revolving door hospital stays to life in the community.

91.     Defendant's failure to provide a reasonable modification of its practices and procedures in order to accommodate Plaintiff constitutes discrimination on the basis of her disability and denies her the benefits of the services, programs, or activities that ACMH has contracted to provide to Plaintiff.

92.     A cause of action is created by Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.*, 28 C.F.R. Part 36.501.

93.     Plaintiff has been injured by Defendant's discriminatory conduct and is entitled to injunctive relief.  28 C.F.R. § 36.501(b).  Plaintiff is also entitled to attorneys' fees pursuant to 28 C.F.R. § 36.505.

**Third Claim: New York State Human Rights Law**

94.      Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

95.      Defendant's conduct as set forth above constitutes discrimination because of disability in the terms, conditions, or privileges of the rental of a housing accommodation or in the furnishing of facilities or services in connection therewith, in violation of the New York Executive Law § 296(5)(a)(2).

96.      Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result.

97.      Defendant's conduct was intentional, willful, and undertaken in disregard for the rights of others.

98.      Accordingly, pursuant to Article 15 of the New York Executive Law § 297, Plaintiff is entitled to actual damages, punitive damages, injunctive relief, and attorneys' fees and costs.

**Fourth Claim: New York City Human Rights Law**

99.      Plaintiff repeats and realleges the allegations in the foregoing paragraphs as if fully set forth herein.

100.      Defendant's conduct as set forth above constitutes a refusal to rent or lease or other withholding of a housing accommodation because of disability, in violation of New York City Administrative Code § 8-107(5)(a)(l), and a refusal or withholding of the advantages, facilities or privileges of a public accommodation on the basis of disability, in violation of the

New York City Administrative Code § 8-107(4)(a). Defendant's conduct as set forth above constitutes discrimination because of Plaintiff's disabilities with respect to the terms, conditions, or privileges of the rental or lease of a housing accommodation, in violation of New York City Administrative Code §§ 8-1 07(5)(a)(2).

101.    Plaintiff has been injured by Defendant's discriminatory conduct and has suffered damages as a result.

102.    Defendant's conduct was intentional, willful, and undertaken in disregard of the rights of others.

103.    Accordingly, pursuant to New York City Administrative Code §§ 8-502(a) and 8-502(f), Plaintiff is entitled to actual damages, punitive damages, injunctive relief and such other remedies as may be appropriate, and attorneys' fees and costs.

## **RELIEF REQUESTED**

WHEREFORE, Plaintiff requests that this Court issue an order and judgment as follows:

104.    Declaring that Defendant's failure to reasonably accommodate Plaintiff's disabilities violates:

     (a)    The Fair Housing Act 42 U.S.C. § 3604 *et seq*;

     (b)    Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181 *et seq.* and its implementing regulations;

     (c)    The New York State Office of Mental Health rules and regulations 14 N.Y.C.R.R.§ 595;

     (d)    The New York State Human Rights Law;

     (e)    The New York City Human Rights Law;

24

105.     Issuing a permanent injunction prohibiting Defendant from discriminating against Plaintiff on the basis of her disability and ordering that Defendant discontinue the Housing Court case it commenced against Plaintiff, instead providing case management services including financial services to assist Plaintiff with her arrears;

106.     Issuing an injunction requiring Defendant to institute procedures to protect and accommodate disabled litigants prior to commencing eviction proceedings in compliance with applicable law and regulations, including:

a.   requiring Defendant to alert the Housing Court judges to the fact that the ACMH tenants are disabled and may be in need of a guardian ad litem;

b.   requiring Defendant to plead all of the relevant laws, rules, regulations, contracts and regulatory agreements that govern an individual building and the building's residents when commencing an eviction proceeding in Housing Court;

c.   requiring Defendant to follow the discharge procedures pursuant to OMH regulations; and

d.   requiring Defendant to provide financial management assistance to tenants, including assistance accessing and maintaining public benefits and emergency rental assistance prior to commencing termination and eviction proceedings.

107.     Awarding Plaintiff damages for the injuries and expenses incurred as a result of the preceding violations;

108.     Awarding attorneys' fees and court costs pursuant to 42 U.S.C. § 12205; 42 U.S.C. § 3613(c); and the New York City and New York State Human Rights Laws;

109.     Granting such further and other relief as this Court deems just and proper.

25

Dated: Bronx, New York
      October 31, 2019

                       Respectfully submitted,

                       Bronx Legal Services
                       349 East 149th Street, 10th Floor
                       Bronx, New York 10451
                       (718) 928-3708
                       Attorneys for Plaintiff

                  BY:     _____
                       JOHN MCDONALD

                  BY:     _____